**MARSHALL DURBIN FARMS, INC.,**
et al., Plaintiffs-Appellees,

v.

**NATIONAL FARMERS ORGANIZA-
TION, INC., et al., Defendants-
Appellants.**

No. 30251.

United States Court of Appeals,
Fifth Circuit.

July 9, 1971.

Robert S. Vance, Birmingham, Ala., Lee D. Sinclair, Washington, D. C., Rowley & Scott, John P. McKenna, Washington, D. C., Worth Rowley, Washington, D. C., for defendants-appellants; Jenkins, Cole, Callaway & Vance, Birmingham, Ala., of counsel.

L. Drew Redden, Sirote, Permutt, Friend & Friedman, Birmingham, Ala., Collier, Shannon, Rill & Edwards, James F. Rill, Washington, D. C., Caddell, Shanks, Harris & Moores, Decatur, Ala., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., Robert H. Harris, Jon H. Moores, Decatur, Ala., C. V. Stelzenmuller, Birmingham, Ala., John A. Fraser, St. Louis, Mo. (Special Coun-

sel for Plaintiff Ralston-Purina Company) for plaintiffs-appellees; Rogers, Howard, Redden & Mills, Birmingham, Ala., Harry E. Jennings, Jr., Washington, D. C., William H. Mills, Birmingham, Ala., James L. Permutt, William G. West, Jr., Birmingham, Ala., of counsel.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOOTLE, District Judge.

GODBOLD, Circuit Judge:

National Farmers Organization (NFO)[1] and several of its members appeal from the District Court's order granting a preliminary injunction against them in an action alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2. We reverse.

The fourteen plaintiffs[2] are processors of broiler chickens and operators of feed mills. They have large numbers of plants and facilities located in numerous different towns in many counties of North Alabama. Generally speaking, the growing of broilers is contracted out to farmers, each of whom feeds and cares for chickens owned by a processor, using feed and supplies the processor sells him, until the chickens are ready for processing. NFO is active in North Alabama, and many of its members in the area are farmers who grow broilers under such contracts with processors.

In April, 1970 NFO began in the North Alabama area what it terms a "holding action" pursuant to which, NFO says, its members refused to grow broilers for plaintiffs until such time as the processors entered into new contractual arrangements sought by NFO. Pickets were set up at some of plaintiffs' plants. On June 8 picketing began on a round-the-clock basis.

On June 18, 1970 the plaintiffs filed suit, charging NFO and some of its Alabama officers and members with conspiring to restrain trade, conspiring to monopolize, and attempting to monopolize. Plaintiffs charged that the defendants had effectuated the alleged offenses in three general ways: conspiring with and inducing producers not members of NFO to refrain from growing broilers under contracts with plaintiffs; interfering with plaintiffs' businesses, plant operations, and sales; and picketing at plaintiffs' plants to induce employees and Department of Agriculture inspectors to refrain from entering.

The lengthy complaint alleges more than 50 specific incidents or activities in which it was charged that NFO had engaged in threats, intimidation, harassment, acts of violence and destruction of property, to effectuate the alleged antitrust offenses. The locations of most of the incidents were not alleged. More than 50 persons were named as victims of the incidents charged. The largest number were broiler producers who did not belong to NFO, and members of their families. Their places, or even counties, of residence were not specified. A substantial number of the alleged victims were said to be employees of plaintiffs, but, as to most of them, the complaint does not reveal of which plaintiff.

The complaint was verified by the affidavit of an officer or managerial employee of each plaintiff. Each verification was the same, stating only that the averments of the complaint were true and correct according to affiant's knowledge, information and belief.

Simultaneously with the filing of the complaint plaintiffs filed a motion for a preliminary injunction, relying upon the verified complaint and nine attached af-

1. NFO asserts that it is an association of agricultural producers organized pursuant to the Capper-Volstead Act, 7 U.S.C. § 291.

2. Marshall Durbin Farms, Inc.; Marshall Durbin Co. of Jasper, Inc; Marshall Durbin Management Co., Inc.; The Pillsbury Company; Spring Valley Foods, Inc.; Spring Valley Farms, Inc.; John Bagwell Farms and Hatchery, Inc.; John Bagwell Farms of Alabama, Inc.; Ingram Farms, Incorporated; Golden Rod Broilers, Inc.; Allied Mills, Inc.; Cotton Producers Association; Nebraska Consolidated Mills Company; and Ralston-Purina Company.

fidavits. Several of the affidavits described specific threats of violence and of destruction of property, and such occurrences as the burning of two chicken houses with evidence of arson, unexplained rifle shots fired in the vicinity of an affiant, and the unexplained death of a cow. Two affidavits concerned suggestions to persons by NFO members not to accept chicks for growing. One affidavit related the unexplained presence of unidentified persons near the butane gas tanks of a processing plant. Some of the affidavits concerned incidents not alleged in the complaint.

On the date of filing, June 18, the court set the motion for hearing at Birmingham, Alabama, on June 25, stating in its order that the parties could present evidence at the hearing by affidavit and oral testimony if they desired. The complaint, motion for injunction (with the nine affidavits), and order were served on the defendants at various times from Friday, June 19 to Tuesday, June 24. NFO's agent for service of process was served on the 19th. On June 23, defense counsel moved for a continuance of the hearing, and it was denied.

At the commencement of the hearing on the morning of June 25, defense counsel renewed the motion for a continuance on the grounds, inter alia, that the issues were complex and that counsel had not had an opportunity to confer with the witnesses. Counsel requested time to prepare adequately. The court denied the motion, stating:

> Of course that request is not unreasonable in the light of the facts. On the other hand today is the only day before the first of October that I have open and for that reason I just can't continue the case. I do not consider the request unreasonable.

Defense counsel renewed the request for a postponement pointing out the substantial impact of the proceedings on what counsel described as "thousands of Alabama farmers," and asked that the matter be set prior to October 1 before whatever district judge might be available. The court declined.

Plaintiffs opened their case by introducing, over objection by the defendants, approximately 77 affidavits, including the nine attached to the motion. Of the approximately 68 affidavits theretofore unrevealed, defendants were handed copies of approximately 47.[3] Plaintiffs did not have copies of 21 affidavits to furnish to defendants.

The defense then introduced 14 affidavits, all but one of them executed prior to June 25. The court recessed for slightly less than an hour to afford it and counsel an opportunity to examine the affidavits. When court reconvened the trial judge announced that he had read all of the defendants' affidavits and, of those submitted by plaintiffs, more than half selected at random from each category (i. e., those describing threats, violence, etc., to non-member producers, those describing interference with plaintiffs' business operations, and those relating to picket line activities.) Plaintiffs then put on the live testimony of the Alabama manager for plaintiff Pillsbury, who described the facilities of the plaintiffs in North Alabama and the general operation of the broiler business. At the conclusion of his testimony (the most lengthy of the day), the court announced that it would only have until 4:30 of that afternoon to receive live testimony, and at 4:30 it would take the case under submission on the affidavits and the live testimony. The court gave each side half of the time remaining. Plaintiffs put on nine more witnesses, and in the remaining one hour and 45 minutes available to them defendants put on eight.

At the conclusion of the testimony, the court announced that it would grant the injunction. The following day it entered findings of fact, which stated that they were based upon all the evidence presented—affidavits, written exhibits and oral testimony—and conclusions of

---

3. Of these, some lacked attachments which were parts of the originals introduced in evidence.

law. It issued an injunction enjoining defendants from acting in concert to interfere with plaintiffs' business activities; from picketing or assembling at or near plaintiffs' plants and mills; from threatening, intimidating (etc.) employees of plaintiffs and persons contracting with plaintiffs; from interfering with plaintiffs' vehicles; and from interfering with ingress and egress of goods at plaintiffs' plants and mills. A $2,500 bond was required. A motion of defendants to increase the bond to $1,000,000 was denied. On motion of defendants this court modified the injunction pending appeal to eliminate restraints on peaceful picketing.

■ In reversing, we emphasize that we understand the deep concern of the experienced trial judge arising from the picture presented to him of threats, intimidation and disorder that might reach beyond the interests of the immediate parties, and we give full regard to his discretion in granting or denying injunctive relief. Reversal is, in large part, laid at the doors of the plaintiffs themselves.

■ Two interrelated rights of the defendants are critical to the case: fair notice and an effective opportunity to controvert the facts adduced in support of plaintiffs' motion. Rule 65(a) requires notice. It does not define what "notice" must be. But we know that it implies a hearing. Miami Beach Federal S. & L. Assn. v. Callander, 256 F.2d 410 (5th Cir. 1958); Hawkins v. Board of Control, 253 F.2d 752 (5th Cir. 1958); Sims v. Greene, 161 F.2d 87 (3d Cir. 1947). "Hearing requires a trial of [issues] of fact. Trial of [issues] of fact necessitates an opportunity to present evidence," *Hawkins, supra,* at 753, and not by only one side to the controversy, *Sims, supra.*

The right of defendants to present controverting factual data is illusory unless there is adequate notice of plaintiffs' claims. "It goes without saying that the requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them." FTC v. National Lead Co., 352 U.S. 419, 427, 77 S.Ct. 502, 508, 1 L.Ed. 2d 438, 444 (1957). *See also:* Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 82 L.Ed. 1129, 1132 (1938); Russell-Newman Mfg. Co. v. NLRB, 370 F. 2d 980 (5th Cir. 1967); Philadelphia Co. v. SEC, 84 U.S.App.D.C. 73, 175 F. 2d 808, 817 (1948), vacated as moot, 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715 (1949). "* * * the right to a hearing means the right to a meaningful hearing." Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 413, 99 L.Ed. 467, 473 (1955).[4]

Plaintiffs thrust the defendants into an impossible position insofar as both preparing and presenting an effective response to the motion for preliminary

---

4. The extent to which the court is required to take oral testimony in a hearing on a motion for a preliminary injunction, and the extent to which it may rely upon affidavits, a choice only tangential to this case, "reflect a tension between the need for speedy action and the desire for certainty and complete fairness." SEC v. Frank, 388 F.2d 486, 490 (2d Cir. 1968). There are a diversity of views in this regard. *E. g., compare,* Sims v. Greene, 161 F.2d 87 (3d Cir. 1947) (suggesting that evidentiary conflicts in such cases may never be resolved on the basis of affidavits alone but only by oral testimony), *with,* Warner Bros. Pictures v. Gittone, 110 F.2d 292 (3d Cir. 1940) (suggesting the trial judge ought to resolve such conflicts through oral testimony), *with* 7 Moore's Federal Practice, ¶ 65.04 [3] at pp. 1639, 1641 (suggesting that the court should be more reluctant to decide controverted factual issues in favor of the movant on affidavits alone since they are at best not too trustworthy), *with* Ross-Whitney Corp. v. Smith, Kline & French Lab., 207 F.2d 190 (9th Cir. 1953) (which indicates the grant of a preliminary injunction may be proper on affidavits alone).

We observe that the instant controversy is at that end of the spectrum where so very much turns upon an accurate presentation of numerous facts that the propriety of proceeding upon affidavits becomes the most questionable. SEC v. Frank, *supra* at 491.

injunction. Prior to the hearing the defendants were obliged, within a few days, to undertake a task which was at least difficult and at most almost insurmountable. They were under the necessity of retaining counsel, locating the numerous persons and investigating the multitude of occurrences alleged in the complaint and separate affidavits, determining if there was evidence to controvert what was said to have occurred, and either procuring affidavits or arranging for live testimony from witnesses. This task was none the easier for the dearth of identifying information in the complaint, which we have pointed out.

At the hearing what had been difficult but perhaps possible became impossible. There was hardly time for defense counsel to read the flood of additional affidavits, which occupy approximately 175 pages of the appendix (even the court had no opportunity to read them all). When one has the opportunity to read them against the incidents and persons specified in the complaint and the original affidavits, it is seen that they have a kaleidoscopic effect, opening numerous new areas of factual inquiry—including, inter alia, additional specific instances of threats, fires at chicken houses, vehicles struck by rifle fire, items thrown at trucks, activities on NFO picket lines at processing plants, activities among government-employed inspectors at processing plants, demands by the Teamsters' union to protect its members from violence if they crossed NFO picket lines, and the transcript of a speech allegedly made by NFO's president. Some were more or less connected to NFO activities, some not at all, some did not rise above the level of suspicion and innuendo. More than 50 of the new affidavits were from persons not named in the complaint as

victims of, or having knowledge of, the incidents originally charged.

There was no way in which the defendants, in a hearing required to be held and completed that day, could controvert with opposing affidavits or live testimony the details of the dozens of newly revealed occurrences said to have taken place at numerous different locations [5] over a substantial area of North Alabama, over a time span of more than two weeks, and involving many persons not previously identified. Indeed, defendants had no opportunity even to determine if evidence existed that might contradict the new affidavits.

In addition, to only a limited extent, if at all, were the corporate officers and managers who verified the complaint shown to have had first hand knowledge of any of the specific incidents charged in the complaint. None filed a separate affidavit, and the one who testified described only background matters. Insofar as the record before us deals in specifics, the complaint is not shown to have been any more than a massive compilation of hearsay.[6] While we do not rule out the possibility that hearsay may form the basis for, or contribute to, the issuance of a preliminary injunction, the district courts have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on information and belief. *See, e. g.,* Humble Oil & Refining Co. v. Harang, 262 F.Supp. 39 (E.D.La.1966). Under the circumstances of this case, in the context of plaintiffs' overall presentation, the extensive use of what appears to be hearsay with respect to disputed factual issues contributes to the error requiring reversal.

Finally, the majority of those incidents described in the complaint were

---

5. Most of the new affidavits did reveal locations of incidents and addresses of affiants.

6. This is not to say that the corporate officers and managers who verified the

complaint had no knowledge, but only that, if they did, the specific content thereof was not revealed to any significant degree.

never verified in any manner, affidavit or oral testimony, by any person purporting to have actual knowledge, and, of those which were, several were the subject of affidavits executed prior to the filing of the complaint and motion for injunction (some as early as June 9, a number on June 15) but, for reasons never explained, not served upon or furnished to defendants until the hearing was in progress. Of the nine whose affidavits were attached to plaintiffs' motion, only one gave oral testimony and was thereby subjected to cross-examination.

■ Rule 6(d), F.R.Civ.P., which we think applicable to motions for preliminary injunctions, requires not only five days notice to the non-moving party of a hearing on the motion, but also that, when a motion is supported by affidavit, the affidavit must be served with the motion and notice of hearing. In another context we have held that the five-day provision of 6(d) is not a hard and fast rule, and that technical compliance may be dispensed with if "it is shown that a party had actual notice and time to prepare to meet the questions raised by the motion of an adversary * * *." Herron v. Herron, 5 Cir., 255 F.2d 589, 593. In this case, we need not reach the question whether, in considering an application for a preliminary injunction, the court is barred from considering any affidavit that has not been served in compliance with Rule 6(d). The procedure followed by plaintiffs in this case cannot be sustained under any standard. And the defendants were not extricated, as they might have been, by a recess of a few days or by entry of a temporary restraining order during the pendency of which they could have had an opportunity to ascertain precisely what the claims were against them and adequately prepare to meet them.

Whatever ultimate efficacy is given to affidavits as opposed to oral testimony,[7] the opportunity *vel non* of a defendant to contradict a plaintiff's factual show-ing may have a determinative effect on the outcome, since, understandably, the courts are more cautious about invoking the extraordinary remedy of the preliminary injunction where critical facts are in dispute. *E. g.*, Industrial Elec. Corp. v. Cline, 330 F.2d 480 (3rd Cir. 1964); Andrews v. Chesapeake & Potomac Tel. Co., 89 F.Supp. 176 (D.D.C.1949); Bartholomew v. Port, 309 F.Supp. 1340 (E. D.Wis.1970) Had the defendants been given adequate opportunity to prepare and present a factual showing controverting that of the plaintiffs, they might have tipped the scales against the grant.

We pretermit comment on other grounds asserted to be reversible error.

The order of the District Court granting the preliminary injunction is reversed and the cause remanded.