**COMMERCE PARK AT DFW FREE-PORT, Plaintiff-Appellant,**

v.

**MARDIAN CONSTRUCTION COMPANY, Defendant-Appellee.**

No. 83–1142.

United States Court of Appeals, Fifth Circuit.

April 9, 1984.

**336**

Herman & Herman, Russ M. Herman, New Orleans, La., Shannon Jones, Jr., Dallas, Tex., for plaintiff-appellant.

Rain, Harrell, Emery, Young & Doke, Marshall M. Searcy, Timothy W. Mountz, Thomas E. Hill, Robb L. Voyles, Dallas, Tex., for defendant-appellee.

Before RUBIN and RANDALL, Circuit Judges, and MITCHELL [*], District Judge.

RANDALL, Circuit Judge:

This appeal is from the district court's order staying the parties' action in federal court pending arbitration, and from the court's subsequent order denying appellant Commerce Park's motion to clarify the stay order. For the reasons set forth below, we affirm.

*I. Factual and Procedural Background.*

Commerce Park is a Texas partnership involved in real estate development. In October, 1980, Commerce Park as owner

and appellee Mardian Construction Company as prime contractor entered into a contract for the construction of an office-warehouse project in Irving, Texas. The contract included a clause providing that "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof ... shall be decided by arbitration ...."

On July 28, 1982, Commerce Park notified Mardian by letter that all of the concrete paving, curb work, and related subbase stabilization work on the project was rejected. On August 26, 1982, Mardian filed a demand for arbitration with the American Arbitration Association. Commerce Park subsequently filed suit in state court, seeking a declaratory judgment that the matters sought to be arbitrated were not arbitrable, an injunction against Mardian from proceeding with arbitration, and claiming damages pursuant to the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), Tex.Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon 1982 Supp.). The action was removed to federal court, and Mardian filed a motion to stay the proceedings pending arbitration. The district court's grant of this motion and its subsequent refusal to clarify its stay order are the subject of this appeal. Specifically, Commerce Park alleges that the district court erred (1) in failing to hold an evidentiary hearing on Commerce Park's motion for a preliminary injunction and Mardian's motion to stay the proceedings; (2) in denying Commerce Park's motion to clarify the stay order; and (3) in refusing to sever Commerce Park's allegedly non-arbitrable DTPA claims from those that are arbitrable, and to permit the former to go forward in federal court; or, in the alternative, in failing to find that the DTPA claims were inextricably intertwined with the other claims and proceeding with litigation as to all.

*II. Jurisdiction.*

■ The district court's order, although interlocutory, is appealable. In *Coastal In-*

[*] District Judge of the Eastern District of Louisi-

ana, sitting by designation.

*dustries, Inc. v. Automatic Steam Products Corp.,* 654 F.2d 375 (5th Cir.1981), we held:

> Both an order staying an action pending arbitration and an order staying arbitration, though interlocutory, are appealable under 28 U.S.C. § 1292(a)(1) as orders similar to an injunction if (1) the action in which the order was made is an action which would have been an action at law prior to the fusion of law and equity; and (2) the stay was sought to permit the prior determination of an equitable defense.

*Id.* at 377 n. 1; *see also Wick v. Atlantic Marine, Inc.,* 605 F.2d 166 (5th Cir.1979). The present appeal satisfies both of these criteria.

### III. The Statutes.

The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), provides, *inter alia:*

> § 2: A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

> \* \* \* \* \* \*

> § 3: If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The DTPA provides:

> Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void
> . . . .

Tex.Bus. & Com.Code Ann. § 17.42. Section 17.50 provides that consumers who have suffered damages as a result of conduct proscribed by the DTPA shall have a cause of action and may, upon prevailing, be awarded treble damages. It is the conflict between sections 2 and 3 on the one hand, and section 17.42 on the other, that forms the basis for this appeal.

### IV. Arbitrability of Commerce Park's DTPA Claims.

Commerce Park contends that the district court erred in failing to sever its allegedly non-arbitrable DTPA claims and permitting them to be litigated prior to or simultaneously with the arbitration proceeding, or, in the alternative, in failing to find that Commerce Park's DTPA claims were inextricably intertwined with its other claims, thus totally precluding arbitration. Commerce Park bases its arguments on the premise that the DTPA's no-waiver provision, *see* Tex.Bus. & Com.Code Ann. § 17.42, reserves to a judicial forum the resolution of claims brought under the DTPA despite the Federal Arbitration Act.

 Commerce Park contends that as a matter of law the DTPA's no-waiver provision precludes the resolution of DTPA claims by arbitration; thus asserting, in effect, that the parties are precluded from agreeing to arbitrate a DTPA claim. We think that the Supreme Court's recent decision in *Southland Corp. v. Keating,* —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), is dispositive of this argument. In *Southland,* the plaintiffs brought suit in state court pursuant to, *inter alia,* the California Franchise Investment Law, Cal. Corp.Code § 31000 *et seq.* (West 1977). The contract between the parties included a broad arbitration clause extremely similar

to the one before us today.[1] The California statute included, in section 31512, a no-waiver provision very similar to the DTPA's.[2] The California Supreme Court held that claims asserted under the Franchise Investment Law were not arbitrable because section 31512 precluded the waiver, effected by an arbitration clause, of their judicial consideration. The United States Supreme Court reversed, holding that section 31512 violated the supremacy clause. In doing so, the Court relied heavily on the policy underlying the Arbitration Act:

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

104 S.Ct. at 853. Thus, the Court held that the Arbitration Act preempted a state law that purported to withdraw the power to enforce arbitration agreements. *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); *Kroog v. Mait*, 712 F.2d 1148 (7th Cir.1983). It is clear under *Southland* that Commerce Park's argument must fail, and that the parties are not precluded from overriding the DTPA's no-waiver provision by an agreement to arbitrate. The no-waiver provision of the DTPA, if given force in this case, would abrogate section 2 of the Arbitration Act. Such an abrogation would violate the supremacy clause.

Having determined that the parties may, if they choose, agree to arbitrate claims arising under the DTPA, we turn to the issue whether the dispute between the parties in the instant case was properly deemed arbitrable by the district court.[3] Initially, we note that the question of arbitrability is to be decided by the court on the basis of the contract entered into by the parties. *See* 9 U.S.C. § 3; *see also Southland*, 104 S.Ct. at 860 n. 7; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 406, 87 S.Ct. 1801, 1806, 1807, 18 L.Ed.2d 1270 (1967). Arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue ...." *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979). Doubts as to arbitrability are to be resolved in favor of arbitration. *See Moses H. Cone, supra*, 103 S.Ct. at 941. In *Prima Paint, supra*, the Supreme Court established that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. at 1806. Thus, for example, if one of the parties alleges fraud in the inducement of the arbitration clause itself, *see id.* at 403–04, 87 S.Ct. at 1805–06, this may be determined by the court. Commerce Park does not contend, however, nor does it appear from the record, that any dispute exists in this case with regard to either of these issues. Thus, the question of arbitrability as a matter judicially cognizable is settled on the basis of the existence of an arbitration clause that on its face appears broad

---

1. The agreement provided: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the Rules of the American Arbitration Association ...." *See* 104 S.Ct. at 855.

2. Cal.Corp.Code § 31512 provides: "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void."

3. Although Commerce Park argues that the district court's stay order may be inferred to have determined that this case involves both arbitrable and non-arbitrable claims, we think that the stay order referred the entire matter to arbitration, and must necessarily have been based on the district court's determination that all aspects of this controversy are arbitrable.

enough to encompass the parties' claims. *See id.* at 406, 87 S.Ct. at 1807.

 We think it is clear that on its face, the language in the arbitration clause in the contract between Commerce Park and Mardian is broad enough to cover the claims here at issue.[4] *See Southland*, 104 S.Ct. at 860 n. 7; *Prima Paint*, 388 U.S. at 406, 87 S.Ct. at 1807. Therefore, the district court correctly determined that the parties' dispute was arbitrable.[5] Because severance of claims depends upon the presence of clearly non-arbitrable claims, it would have been inappropriate in this case.[6]

 Commerce Park also urges us that the doctrine of "intertwining" is applicable to this case. This doctrine is a narrow exception to the pro-arbitration policy of the Arbitration Act. Its application is proper when an action states claims both under state law and an area of federal law, such as the federal securities acts, that is not subject to arbitration despite the existence of a broad arbitration clause in the parties' contract. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Smoky Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446 (5th Cir.1983). In these circumstances, the competing federal policies—that favoring arbitration and that preserving exclusive federal jurisdiction over certain subject matter—are resolved in favor of litigation. *See Wilko v. Swan, supra; Smoky Greenhaw, supra; Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir. 1981); *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). Because it constitutes an exception to the otherwise strictly-construed mandate of section 3, *Wilko*'s application is limited to those areas in which the question raised is whether Congress has created an exception to the Arbitration Act, not whether a state legislature may do so.[7] *See Southland*, 104 S.Ct. at 861 n. 11; *Kroog*, 712 F.2d at 1154.

 In the instant case, on the other hand, we are presented with inconsistent *state* and federal policies. Nevertheless, Commerce Park contends that the state legislative purpose embodied in the DTPA's no-waiver provision is sufficiently analogous to those underlying the federal securities acts and antitrust laws to merit application of the intertwining doctrine in this case. In effect, Commerce Park urges us to hold that the federal policy represented by the Arbitration Act should yield to the state policy represented by the DTPA. It is well settled, however, that in a case involving actual conflict between state and federal regulation, "[a] holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulation is a physical impossibility ...." *Florida Avocado Growers,*

---

4. To the extent that Commerce Park argues that its DTPA claims do not "arise from the Contract" but are distinct, statutory claims "based on the [DTPA's] state interest of protecting the public," *see* Record Vol. III at 476, 489–90, the breadth of the arbitration clause, which calls for arbitration of all disputes "relating to" the contract, is likewise dispositive.

5. We note that matters of procedural arbitrability, such as, *inter alia,* whether the request for arbitration was timely under the arbitration agreement, are for the arbitrator to decide. *See, e.g., Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027–28 (11th Cir.1982); *O'Neel v. National Ass'n of Securities Dealers,* 667 F.2d 804, 807 (9th Cir.1982); *Conticommodity Services Inc. v. Philipp & Lion,* 613 F.2d 1222, 1226 (2d Cir.1980).

6. Commerce Park also asserts that submission of its DTPA claims to arbitration may deprive it of potential treble damages, which are available under the DTPA but may not be awardable by an arbitrator. We do not, at this juncture, comment on the propriety of an award of treble damages by an arbitrator in the context of the case before us. Rather, such a determination would be proper in an action to enforce an award, should one be assessed.

7. The doctrine has also been applied to cases involving federal antitrust claims. *See, e.g., American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968). We have recently held it inapplicable in cases arising under the Commodity Exchange Act, *see Smoky Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner & Smith,* 720 F.2d 1446, 1450 (5th Cir.1983).

*Inc. v. Paul*, 373 U.S. 132, 141, 142–43, 83 S.Ct. 1210, 1216, 1217–18, 10 L.Ed.2d 248 (1963); *see also Kroog*, 712 F.2d at 1154. Rather, federal preemption is, in such a case, automatic. Because it is clear that in the case before us, the operation of the DTPA's no-waiver provision presents such a "physical impossibility," we hold that it is preempted by section 3 of the Arbitration Act.

### V. Necessity for an Evidentiary Hearing.

 Commerce Park also asserts that the district court should have held an evidentiary hearing on the parties' motions for a preliminary injunction and a stay prior to its ruling on the latter. Commerce Park argues that section 3 of the Arbitration Act requires that a hearing form the basis for the court's determination of arbitrability. It also contends that because in this case the court's grant of Mardian's motion to stay in effect operated as an adjudication of Commerce Park's preliminary injunction motion, the procedural prerequisites of Fed.R.Civ.P. 65(a), including a hearing, should have been met. We are not persuaded by either contention.

*Commerce Park* relies for its section 3 argument on the Supreme Court's recent decision in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra.* In *Moses Cone*, the Court affirmed the court of appeals' reversal of a stay of a federal action seeking to compel arbitration [8] pending the outcome of a concurrent state court proceeding. Although the Court's focus was on section 4 rather than section 3 of the Arbitration Act, it noted that both sections "call for an expeditious and summary hearing, with only restricted inquiry into factual issues." 103 S.Ct. at 940. Although Commerce Park asserts that this statement is dispositive of this issue, its argument ignores two crucial aspects of *Moses Cone*.

First, we consider it significant that in *Moses Cone* the Supreme Court expressly approved the court of appeals' *sua sponte*

determination that the underlying dispute was arbitrable, thus effectively entering a section 4 order compelling arbitration, despite the fact that this question was not appealed. Noting that the "Arbitration Act calls for a summary and speedy disposition" of proceedings seeking to compel arbitration, the Court held:

> The Court of Appeals had in the record full briefs and evidentiary submissions from both parties on the merits of arbitrability, and held that there were no disputed issues of fact requiring a jury trial before a § 4 order could issue.

Thus, the action of the court of appeals was deemed proper. 103 S.Ct. at 944. We think it clear that the application of this analysis in the instant case compels us to conclude that no evidentiary hearing was required. The parties were afforded the opportunity, of which they both took full advantage, exhaustively to brief the issues to the district court. As we have already noted, Commerce Park does not allege, nor does it appear on the record, that disputed factual questions going to the legal issue of arbitrability existed. In the absence of such a showing, we conclude that an evidentiary hearing was not required as a predicate for the district court's stay order. Moreover, such a hearing, in this case, would merely have contravened the clear intent underlying the Arbitration Act, which is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses Cone*, 103 S.Ct. at 940.

 Moreover, the Court expressly noted that, pursuant to section 6 of the Act, "a request for relief under either § 3 or § 4 is to be treated procedurally as a motion." 103 S.Ct. at 940 n. 27. Obviously, not every motion made in federal court requires a hearing in order to be properly adjudicated. Federal Rule of Civil Procedure 78 provides: "To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon

---

**8.** *See* 9 U.S.C. § 4 (1982).

brief written statements of reasons in support and opposition." As we have already discussed, the role of a federal court in its determination of a section 3 application for a stay is very limited. To the extent that factual issues are relevant, they must relate directly to the formation and performance of the arbitration clause itself. *See Prima Paint, supra,* 388 U.S. at 404, 87 S.Ct. at 1806. Commerce Park advances no factual issues in this regard that it contends are in dispute; it merely urges that it should have been afforded a hearing. We are not persuaded by this unsupported assertion.

■ With regard to Commerce Park's Fed.R.Civ.P. 65(a) argument, we think that the absence of disputed factual issues is likewise dispositive. Rule 65(a) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Even if we assume, first, that this provision applies to the *denial* of a preliminary injunction, and, second, that the district court's stay order operated, in effect, to deny Commerce Park's motion to enjoin arbitration, we do not accept the argument that notice, in the context of such a denial, required that a hearing be held in this case.

Our analysis of rule 65(a)'s requirements in *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.,* 446 F.2d 353 (5th Cir.1971), is instructive. There, we held that the district court erred in granting a preliminary injunction where the defendants were not afforded the notice required by the rule. Although a hearing was held that, technically, was properly noticed, the plaintiffs at that hearing "flooded" the defendants with 68 theretofore-unrevealed affidavits. Moreover, we noted:

> Prior to the hearing the defendants were obliged, within a few days, to undertake a task which was at least difficult and at most insurmountable. They were under the necessity of retaining counsel, locating the numerous persons and investigating the multitude of occurrences alleged in the complaint and separate affidavits, determining if there was evidence to controvert what was said to have occurred, and either procuring affidavits or arranging for live testimony from witnesses.

*Id.* at 357. In these circumstances, we held that the defendants had been denied "an effective opportunity to controvert *the facts* adduced in support of plaintiffs' motion." Thus, they had not been afforded adequate notice of the hearing. *Id.* at 356 (emphasis added). We went on to state that the notice required by rule 65(a) "implies a hearing;" *id.,* however, this observation must necessarily be viewed in light of the circumstances presented in *Marshall Durbin.* We expressly noted that that case was "at that end of the spectrum where so very much turns upon an *accurate presentation of numerous facts*" that the lack of a hearing would have been most inappropriate. *Id.* at 356 n. 4 (emphasis added). We did not state, nor do we think that *Marshall Durbin* can be fairly read to imply, that in the absence of disputed factual issues a hearing is always required before a motion for a preliminary injunction can be denied. Rather, we think *Marshall Durbin* stands for the proposition that the notice contemplated by rule 65(a) mandates that where factual disputes *are* presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted. Here, we perceive no such dispute; thus, we think that the parties were given ample opportunity to present their respective views of the legal issues involved. *See, e.g., Beauboeuf v. Delgado College,* 303 F.Supp. 861, 862 (E.D.La. 1969), *aff'd,* 428 F.2d 470 (5th Cir.1970); *see also Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551, 554 (2d Cir. 1970); C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2949 (1973) ("preliminary injunctions are denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless").

## VI. Vagueness of the Stay Order.

■ Commerce Park contends that the district court's stay order lacked the specificity required by Federal Rules of Civil Procedure 65(d) and 52(a). The order provided, in its entirety:

> This Civil Action is stayed during the pendency of the arbitration between the Parties that is being conducted under the auspices of the American Arbitration Association, and the Parties shall report back to the Court when those proceedings have terminated.

The court subsequently denied Commerce Park's motion to clarify this order. On appeal, Commerce Park contends that because the stay order in effect enjoined the parties from going forward with judicial proceedings, it should be considered an injunction for the purpose of compliance with Federal Rule of Civil Procedure 65(d), which provides in pertinent part:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ....

Rule 52(a) provides, in pertinent part:

> [I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action .... Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

If the stay order actually constituted an injunction, therefore, the district court's refusal to clarify the order was error. Thus,

we must consider whether this characterization of the stay order is correct.

In *International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association*, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967), the Supreme Court set forth the standard by which to evaluate the actual character of an order, regardless of its appellation: "[A]n equitable decree compelling obedience under the threat of contempt ... [is] an 'order granting an injunction' within the meaning of Rule 65(d)." *Id.* at 75, 88 S.Ct. at 207. Commerce Park asserts, without citing any authority, that the stay order in the instant case, "if violated by obstructing arbitration, would be punishable by contempt." Brief for Appellant at 21. We do not accept this assertion. As the Supreme Court stated in *Moses Cone*, a stay of litigation "leaves the recalcitrant party free to sit and do nothing—neither to litigate nor to arbitrate." 103 S.Ct. at 943. As Commerce Park itself concedes, a stay pursuant to section 3 is "an order of a court to govern its own proceedings," Brief for Appellants at 20; it does not "compel obedience" within the meaning of *International Longshoremen's Association*. Rather, Commerce Park is free to "sit and do nothing."

Thus, we conclude that the district court's order staying litigation pending arbitration was not an injunction within the meaning of rule 65(d). The court was not, therefore, obliged to comply with that rule's provisions.[9]

## VII. Conclusion.

The order of the district court staying litigation pending arbitration of the parties' dispute is AFFIRMED.

> We also note that, as evidence of the stay order's vagueness, Commerce Park refers to the fact that subsequent to ordering the stay the district court entered an order permitting discovery to proceed. We conclude, however, that the stay order was not vague. We also note that the order permitting discovery to proceed is not being appealed, and that the motion for discovery was filed by Commerce Park.

---

**9.** To the extent that Commerce Park alleges that the alleged vagueness of the district court's order left the parties uncertain as to the scope of the arbitration, our disposition of the arbitrability issue is determinative. *See supra* part IV. We think it clear that the district court correctly considered all of Commerce Park's claims to be, as a legal matter, arbitrable.