**ALL CARE NURSING SERVICE, INC.,**
Plaintiffs–Appellees,

v.

**BETHESDA MEMORIAL HOSPITAL,**
INC., et al., Defendants–Appellants.

**P.D.Q. NURSE, INC., Plaintiff–Appellee,**

v.

**SOUTH FLORIDA HOSPITAL
ASSOCIATION, INC., et al.,**
Defendants–Appellants.

No. 89–5259.

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1989.

William J. Dunaj, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for South Florida Hosp.

Paul A. Koches, Joseph Brooks, Wickens, Koches & Cale, Washington, D.C., for Palm Beach.

Robert R. Vawter, Jr., Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for Doctors Hosp.

Ronald B. Ravikoff, Zuckerman, Spaeder, Kenneth R. Pierce, Zuckerman, Spaeder, Taylor & Evans, Miami, Fla., for All Care, Complete Health, Quality Professional & Benson.

Michael A. Kamen, West Palm Beach, Fla., for Benson.

Charles C. Powers, West Palm Beach, Fla., for PDQ Nurse.

Before TJOFLAT, Chief Judge,
VANCE, Circuit Judge, and
PITTMAN *, Senior District Judge.

PITTMAN, Senior District Judge:

In this case, appellants, defendants below, appeal from the district court's order granting a preliminary injunction against them in an action alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and Fla.Stat. § 542.18 and 542.19. As to appellant Palm Beach Gardens Medical Center, we vacate the judgment and remand with instructions to dismiss. As to all other appellants, we vacate the injunction and remand for further proceedings.

On December 27, 1988, appellees, plaintiffs below, All Care Nursing Service, Inc., A Complete Health Care Services, Inc., Benson's Health Care Services, Inc., and Quality Professional Nursing of Florida, Inc. filed a complaint against the twenty-two appellants, including thirteen Palm Beach County hospitals (appellant hospitals), eight temporary nursing service agencies (preferred agencies) and The South Florida Hospital Association (SFHA) arising from the appellants' alleged plan to institute a "preferred provider program" for the provision of temporary nursing services (The SFHA plan).[1] Appellees filed an emergency motion for preliminary injunction simultaneously with the complaint.

Appellees are temporary nursing agencies located in Palm Beach County, Florida. According to the parties in this action, there presently exists a nationwide shortage of nurses. In the summer of 1988, the appellant hospitals met under the auspices of the defendant SFHA and decided to de-

velop a program under which certain of the temporary service agencies would be designated "preferred agencies." Each participating hospital agreed to give first consideration to the preferred agencies in the staffing of temporary nurses. Temporary nursing service agencies were contacted directly or by way of a notice in the *Palm Beach Post*, and were invited to submit bids for the provision of temporary nursing services. Sixteen temporary nursing services submitted bids. Of this number, four were eliminated because of their prices. The remaining agencies were asked to resubmit lower bids. The eight appellant agencies were selected as preferred agencies. To maintain preferred status, these agencies were required to ensure that their nurses were covered by workmen's compensation. The agencies also had to agree to rebate a percentage of their gross yearly income to the SFHA, and had to agree not to compete with the hospitals in the hiring of nurses.

Oral argument was held on appellees' emergency motion for a preliminary injunction on January 27, 1989. At the close of the hearing, the court took the cause under submission. On February 21, 1989, the court issued an order granting the appellees' motion for a preliminary injunction. The court, after determining that appellees were likely to prevail on their state "price fixing" and "boycott" claims, ordered the appellant hospitals and the SFHA to employ the services of any temporary nursing agencies, including the appellees, capable of fulfilling their needs until the ultimate resolution of this suit.[2] The court also enjoined the appellants from (1) establishing any maximum price standards to which agencies must adhere; (2) substantially interfering with the management or manner in which the individual agencies employ

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. On December 28, 1988, P.D.Q. Nurse, Inc. filed a separate action alleging similar violations of state and federal antitrust laws by the same defendants. On February 21, 1989, the district court entered an order consolidating the P.D.Q. case with the action brought by appellees.

2. The trial court determined that because appellees had failed to show the effect of the appellants' actions on interstate commerce, as required to invoke the jurisdiction of the Sherman Act, the court was unable to find that appellees had demonstrated a likelihood of success on the merits. The court went on to determine that plaintiffs had made claims under the Florida antitrust act, and such claims were properly before the court.

their nurses, and (3) requiring them to contribute any portion of their income in order to be considered as providers of temporary nurses. A $50,000.00 bond was required of the appellants collectively.

The appellants challenge the district court's finding that the appellees are likely to prevail at a trial on the merits, and the court's application of the per se rule to appellees' price fixing and group boycott claims. Appellants also argue that the district court abused its discretion in granting a preliminary injunction without conducting an evidentiary hearing. According to appellants, given the nature of this case, the complexity of the facts, and the parties' vigorous dispute regarding such facts, it was incumbent upon the district court to allow the parties to present evidence at a hearing, including live testimony, and to afford the parties the opportunity to cross-examine witnesses. Additionally, appellant Palm Beach Gardens Medical Center (Palm Beach Gardens) specifically challenges the preliminary injunction issued against it on the ground that there is no evidence whatsoever that it participated in the SFHA program. Palm Beach Gardens contends that it did not execute any of the nursing services agreements challenged by the appellees, and it did not have any exclusive dealing agreement, written or oral, express or implied, with any temporary nursing agency or group of agencies.

■ The law is well established that a district court's order granting or denying a preliminary injunction is reviewable only for an abuse of discretion. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988) *citing United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983). A district court may grant injunctive relief if the movant shows (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) that if issued the injunction would not be adverse to the public interest. *Id.* "A preliminary injunction is an extraordi-

nary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *Jefferson County*, 720 F.2d, at 1519 (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)).

■ The injunction issued against Palm Beach Gardens had no basis in law, and must be dissolved. The district court stated in reference to Palm Beach Gardens that "defendant should not suffer any adverse effects from the injunction and may continue to seek temporary nurses in the manner it has in the past. Defendant's argument is more appropriately the subject of a motion to dismiss or for summary judgment." Preliminary injunctions are issued when drastic relief is necessary to preserve the status quo. *Cate v. Oldham*, 707 F.2d 1176 (11th Cir.1983); *Bannum, Inc. v. City of Fort Lauderdale, Fla.*, 657 F.Supp. 735 (S.D.Fla.1986). In the case *sub judice*, the issuance of an injunction against Palm Beach Gardens was inappropriate because it was not necessary to preserve the status quo. Simply put, Palm Beach Gardens was not shown to be a participant in the program that the appellees sought to have enjoined; thus, there was no activity in regards to Palm Beach Gardens to be enjoined. In fact, the court finds that the appellees have failed to even make out a claim against this appellant. The evidence is uncontroverted that Palm Beach Gardens did not execute any of the nursing services agreements challenged by the appellants, and does not have any exclusive dealing agreement, written or oral, with any temporary nursing agency or group of agencies. The only appellee agencies alleging any prior course of dealing with Palm Beach Gardens are Quality Professional Nursing of Florida, Inc., and Florida Nurses Network. These agencies do not contend thatthey have been excluded from engagements with this particular appellant, but allege instead that their nursing businesses in Palm Beach County have collapsed due to the agreement between SFHA and participating member hospitals. Based upon these facts, the court concludes that appellees have failed to make out a cognizable claim against Palm Beach Gar-

dens. Accordingly, the preliminary injunction issued against Palm Beach Gardens Medical Center is vacated, and this action is remanded to the trial court with instructions to dismiss Palm Beach Gardens Medical Center.[3]

■ Turning now to the remaining appellants, the court determines that the district court abused its discretion in granting the preliminary injunction. "Federal Rule of Civil Procedure 65(a) states, 'No preliminary injunction shall be issued without notice to the adverse party.' The United States Supreme Court has noted in passing that '[t]he notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.' *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 432 n. 7, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974)." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988); *see, also, Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 341 (5th Cir.1984). Appellees' emergency motion for a preliminary injunction was originally set for oral argument on January 6, 1989. Counsel for all parties were advised that the only oral testimony which would be allowed at said hearing was that of economists. Appellants filed a motion for a continuance on the ground that most of the defendants were served with plaintiffs' complaint and related pleadings between December 23, 1988 and January 3, 1989. Defendants' motion was granted on January 6, 1989, and on this same day the judge originally assigned to

the case recused himself. Later, a second judge also recused himself and the case had to be reassigned. Appellees do not dispute that on January 25, 1989, Judge Paine's office advised counsel by telephone that on January 27, 1989, a mere two days later, Judge Paine would hear oral argument on the case and that no witnesses would be permitted, although the parties could file written affidavits and submissions in support of their respective positions. Appellants prepared submissions and counter-affidavits which were filed on the morning of the hearing. The hearing transcript reflects that at the beginning of the hearing the court advised counsel that the court had only one hour to spend on the matter; thus, each side was given thirty minutes in which to present their arguments. A two-day notice, coupled with thirty minutes for oral presentations can hardly be said to constitute a meaningful opportunity to oppose appellees' motion for preliminary injunction. The court thus determines that under the facts of this case appellants were deprived of a fair and meaningful opportunity to oppose appellees' motion.

■ Furthermore, the trial court abused its discretion in failing to hold an evidentiary hearing in this case. An evidentiary hearing is not always required before the issuance of a preliminary injunction. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d at 169. Where the injunction turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility issues. *Forts v. Ward*, 566 F.2d 849, 851 (2d Cir.1977); *see, also, Commerce Park at DFW Free-*

---

**3.** Appellees do not dispute Palm Beach Gardens' contentions, but instead argue that Palm Beach Gardens should have raised this issue with the court below by way of a motion to dismiss or a summary judgment motion. Generally, an appellate court will not consider matters which were not raised or considered in the court below. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *McKissick v. United States*, 379 F.2d 754, 759 (5th Cir. 1967). "There is, however, no rigid and undeviating judicially declared practice under which courts of review invariably and under all circumstances decline to consider all questions which have not previously been specifically

urged.... Exceptional cases or particular circumstances may prompt a reviewing court, or where public policy requires, to consider questions neither pressed nor passed upon below. The power to raise and decide questions sua sponte is, however, to be exercised sparingly and with full realization of the restrictions and limitations inherent in its employment." *McKissick, quoting Nuelsen v. Sorensen*, 293 F.2d 454, 462 (9th Cir.1961). The total failure of the appellees to offer any evidence to support their allegations against this appellant does not justify the further time and expense to the appellant if it remained a party defendant.

*port v. Mardian Construction Co.,* 729 F.2d 334, 341 (5th Cir.1984). The extent to which a court is required to take oral testimony in a hearing on a motion for a preliminary injunction, and the extent to which it may rely upon affidavits reflect a tension between the need for speedy action and the desire for certainty and complete fairness. *SEC v. Frank,* 388 F.2d 486, 490 (2d Cir. 1968). In the case *sub judice,* the trial court granted the preliminary injunction based on the various conflicting affidavits and exhibits submitted by the parties and the abbreviated oral arguments of counsel. The conflicting affidavits placed in serious dispute issues central to appellees' claims. For example, the economists' affidavits submitted on behalf of the parties contained disputes regarding the relevant product market, and the existence of market power in the appellants. Also contested was the issue of whether the SFHA plan fostered or impeded price competition among temporary nursing service agencies, and whether any price restraint was ancillary to the quality of care features of the program. In this complex antitrust action, where much depends upon the accurate presentation of numerous facts, the trial court erred in not holding an evidentiary hearing to resolve these hotly contested issues. The fact that the appellants did not request an evidentiary hearing is of no moment, in view of the complexity of the case and the critical issues in dispute.

Accordingly, as to appellant Palm Beach Gardens Medical Center, we VACATE the judgment and REMAND to the trial court with instructions to dismiss Palm Beach Gardens Medical Center from this action. As to all other appellants, we VACATE the injunction and REMAND for further proceedings.

TJOFLAT, Chief Circuit Judge, concurring:

I concur in the majority's disposition of this case but write separately because I am concerned about the district court's application of the rule of reason and the per se rule to the appellees' boycott and price-fixing claims.[1] The majority's opinion creates the impression that the district court simply made procedural errors in failing to give proper notice before issuing the preliminary injunction and in failing to hold an evidentiary hearing on disputed facts. I agree with that characterization of the district court's errors but fear that the procedural errors resulted from a misunderstanding of when a court may apply the per se rule to claims of boycott and price fixing.

In issuing the preliminary injunction, the district court apparently based its prediction that the appellees ultimately would prevail on the merits on a mistaken belief that the per se rule would automatically apply to this case. That mistaken belief probably led the court to forgo the evidentiary hearing. I believe it is wise, therefore, to discuss the findings of fact that a court must make before it may apply the per se rule to a case such as this.

With regard to the boycott claim, I submit that the Supreme Court's opinion in *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985), clearly prohibits the application of the per se rule to cooperative buying arrangements unless a court has made certain preliminary findings of fact. In *Northwest,* the Court held that "[a]bsent ... a showing [of market power or exclusive access to an element essential to effective competition] with respect to a cooperative buying arrangement, courts should apply a rule-of-reason analysis." 472 U.S. at 297, 105 S.Ct. at 2621; *see Live Poultry Dealers' Protective Assoc. v. United States,* 4 F.2d 840, 842–43 (2d Cir.1924) (L.

1. The district court indicated in its order granting a preliminary injunction that, if the plaintiffs were to succeed on their claims, Florida antitrust laws would provide the basis for their success. Nevertheless, I base the views expressed in this opinion on an interpretation of the federal antitrust laws. I do so because, as the district court correctly noted, "the reasoning of the opinions interpreting the Sherman Act [is] equally applicable to the court's analysis of the Florida antitrust laws." *See generally* Fla. Stat. §§ 542.16 (Florida antitrust laws complement federal antitrust laws), 542.18 (provision analogous to § 1 of the Sherman Act) (1987).

Hand, J.) (Sherman Act forbids "all agreements preventing competition in price among a group of buyers, otherwise competitive, if they are numerous enough to affect the market").

Thus, the district court must make findings of fact with regard to the South Florida Hospital Association's (SFHA) market power and control over access to an essential element of competition. If, for example, the district court finds that the SFHA is merely an association of small hospitals that, as a combined force, accounts for only a small share of the relevant market for temporary nursing services,[2] then the court should hold that the SFHA does not possess market power. Likewise, if the court finds that members of the SFHA could contract independently with temporary nursing agencies, then the court might also hold that the SFHA does not have control over access to an essential element of competition. *Cf. Broadcast Music, Inc. v. Columbia Broadcasting Sys.*, 441 U.S. 1, 23–24, 99 S.Ct. 1551, 1564, 60 L.Ed.2d 1 (1979) (noting that members of a joint sales agency could sell independently). If the court finds either that the SFHA had market power *or* that it had control over access to an essential element of competition, then the court should apply the per se rule of liability. Otherwise, the court should examine the buying arrangement under a rule-of-reason analysis. *See Northwest Wholesale*, 472 U.S. at 296–97, 105 S.Ct. at 2620–21.

Determining whether to apply the rule of reason or the per se rule to the appellees' price-fixing claim is somewhat more complex. The Supreme Court has never wavered from its application of the per se rule to price-fixing agreements. *See Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 347, 102 S.Ct. 2466, 2475, 73 L.Ed.2d 48 (1982). The appellants, however, have presented facts that, if true, would indicate that the members of the SFHA never entered into an *agreement* to fix prices;[3] rather, the appellants entered into an agreement that allegedly had as a corollary effect the stabilization of prices for temporary nursing services.[4]

Certainly, any agreement that has the effect of stabilizing prices can constitute a violation of the antitrust laws. *See United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 222–23, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940).[5] Not all joint purchasing agreements, however, have a stabilizing effect on prices. If the purchasing agent does not have market power or does not have control over access to an essential element of competition, then the agent will still have to bid against other purchasers for the scarce resources. Consequently, the appellees' price-fixing claim will stand or fall on the same findings of fact required to support their boycott claim: (1) did the SFHA have market power, and (2) did the SFHA control access to an essential element of competition? If the court answers "yes" to either question, then the per se rule should be applied. *See United States v. Trenton Potteries Co.*, 273 U.S. 392, 397, 47 S.Ct. 377, 379, 71 L.Ed. 700 (1927) ("Agreements which create such *potential power* [to fix prices] may well be held to be in themselves unreasonable or unlawful restraints...." (emphasis add-

---

**2.** One commentator, citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), and *Standard Oil Co. v. United States,* 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949), has suggested that control of ten percent of the relevant market should ordinarily constitute market power. *See* Davidow, Antitrust, Foreign Policy, and International Buying Cooperation, 84 Yale L.J. 268, 273 & n. 27 (1974). The Court's opinion in *Brown Shoe,* however, makes clear that such a bright-line test for market power probably will be of little use. *See* 370 U.S. at 343–44, 82 S.Ct. at 1534.

**3.** Appellants allege that no maximum or uniform price was set for accepting bids. In fact, they allege, all of the bids ultimately accepted were above the price range suggested by the SFHA.

**4.** The stabilization results from the members' agreement not to bid against each other for temporary nursing services.

**5.** Of course, it is not the court's duty to determine whether the price stabilization is economically beneficial. As the *Socony–Vacuum* Court stated, "[t]he elimination of so-called competitive evils is no legal justification for such buying programs." 310 U.S. at 220, 60 S.Ct. at 843.

ed)). If the court answers "no" to both questions, then it should apply the rule-of-reason analysis to the price stabilization claim as well as to the boycott claim. *See Broadcast Music*, 441 U.S. at 23–24, 99 S.Ct. at 1564–65.