MIAMI LIGHT PROJECT; Debra Ohanian; Gable Stage; Cuban Cultural Group a/k/a Grupo Cultural "La Ma' Teodora;" and Hugo Cancio, individually and on behalf of all other similarly situated, Plaintiffs,

v.

MIAMI–DADE COUNTY, Defendant.

No. 00–1281–CIV.

United States District Court, S.D. Florida.

May 16, 2000.

---

Bruce S. Rogow, Beverly A. Pohl, Bruce S. Rogow, P.A., Fort Lauderdale, FL, for Plaintiffs.

Robert A. Cuevas, Jr., Miami–Dade County Attorney, Miami, FL, for Defendants.

## ORDER GRANTING IN PART PLAIN-TIFFS' MOTION FOR PRELIMI-NARY INJUNCTION

MORENO, District Judge.

*"My general plan would be, to make the States one as to everything con-*

*nected with foreign nations, and several as to everything purely domestic."* [1]

**Thomas Jefferson**

## I. INTRODUCTION

In 1996, Miami–Dade County, ("County"), recognized that "the Country of Cuba continues to maintain a policy of denying common freedom of speech, press, assembly, religion, and human rights to the majority of their citizens," and passed two resolutions restricting the transaction of business with firms doing business with Cuba. These ordinances, commonly known as the "Cuba Affidavit," prohibit the County from contracting with parties that do business with Cuba or Cuban nationals; or whose principals have unlawfully traveled to Cuba within the last decade. Plaintiffs, a group of cultural organizations and individuals involved in the production of theater, art, music and dance performances, are challenging the constitutionality of these ordinances. Today, this court does not reach a decision on the ultimate merits of Plaintiffs' challenge. This preliminary injunction focuses on the narrow issue of whether Plaintiffs shall be allowed to participate in the application process for Miami–Dade County grants without signing the required "Cuba Affidavit."

As to this limited issue, the court finds that there is a substantial likelihood that certain portions of the "Cuba Affidavit" may be unconstitutional under the foreign affairs clauses of the United States Constitution and, therefore, a narrow preliminary injunction is warranted. Specifically, a preliminary injunction shall issue as to those portions of the "Cuba Affidavit" relating to Miami–Dade County Resolution R–202–96, however, as to those portions of the "Cuba Affidavit" relating to Miami–Dade County Resolution R–206–96 no injunction shall issue. Simply put, the County must accept applications for grants submitted without those portions of the "Cuba Affidavit" relating to *lawful* conduct with Cuba. However, the County can enforce those provisions of the "Cuba Affidavit" relating to *unlawful* travel to Cuba.

The County has the right to spend its tax dollars in any way it sees fit. In no way does this Order require the County to fund Cuban artists or sponsor Cuban cultural programs. Nor does this order overturn a "Cuba Affidavit" requirement that would be limited to Resolution R–206–96. This order is no more than a limited preliminary order intended to maintain the status quo until the issues can be properly adjudicated on the merits.

## II. BACKGROUND

### A. The Cuba Affidavit

On February 24, 1996, Fidel Castro, the Communist dictator of Cuba, sent Cuban MiG fighters into the Florida Straits and shot down four pilots who were members of the humanitarian organization "Brothers to the Rescue." In response to this international incident, and Cuba's "consistent disregard for internationally accepted standards of human rights," Miami–Dade County passed Resolution Nos. R–202–96 and R–206–96.

Resolution No. R–202–96 provides that the County shall not knowingly enter into a contract with any firm that is deemed to be doing business directly or indirectly with Cuba. Resolution No. R–206–96, passed the same day, provides that the County shall not award contracts to any individual who has traveled to Cuba in violation of U.S. travel restrictions during the preceding ten years.

Under the authority of these resolutions, Administrative Order 3–12 requires any party wishing to contract with the County to submit a signed copy of the "Cuba Affidavit." [2]

---

1. Thomas Jefferson, in Paris, writing on August 4, 1787 to Edward Carrington in New York. CHARLES WARREN, THE MAKING OF THE CONSTITUTION 382 (2d ed.1937).

2. The text of the "Cuba Affidavit" is as fol-

The first four clauses of the "Cuba Affidavit" require the signatory to swear that he has not engaged in any transaction involving Cuba, Cuban products or Cuban nationals. The fifth clause requires the affiant to swear that he has not subcontracted with any party who engaged in any transaction involving Cuba, Cuban products or Cuban nationals. Lastly, clause six, requires the affiant to swear that he has not unlawfully traveled to Cuba in the last ten years.

While the "Cuba Affidavit" generally applies to any individual or business contracting with the County, a special exception is carved out for "contracts with air carriers that pertain to access to and from Miami International Airport and use thereof." (A.O.3–12). Additionally the County Manager can waive the Cuba Affidavit requirements upon a request from a county agency and upon a finding of "special characteristics." *Id.*

## B. The Plaintiffs' Challenge

Plaintiffs are a group of organizations and individuals, who offer educational, artistic, musical, balletic, cinematic or other cultural events directly or indirectly involving Cuban nationals. Plaintiffs challenge the "Cuba Affidavit" ordinance on-its-face and as it applies to prohibit the use of County venues and to preclude the issuance of grants by the County's Department of Cultural Affairs, International Cultural Exchange Grants Program, to organizations and individuals that refuse to sign the "Cuba Affidavit." [3]

Plaintiffs claim the Cuba Affidavit requirement violates the following constitutional provisions: the federal foreign affairs power; the foreign and interstate commerce clauses; the supremacy clause; the First Amendment as to speech and association based on nationality; and the equal protection clause of the Fourteenth Amendment.

The emergency nature of this motion is a County imposed deadline of May 16, 2000, for the submission of grant proposals and requests.[4] Plaintiffs claim that, absent an injunction, they would be precluded from this round of grants and accord-

---

lows:

METRO DADE COUNTY CUBA AFFIDAVIT

In compliance with Metropolitan Dade County Resolution Number R–202–96 and R–206–96, I ____ being first duly sworn, state that neither the firm, (individual, organization, corporation, etc.), submitting this bid or proposal or receiving this contract award nor any of its owners, subsidiaries, or affiliated or related firms:
Has:
1. engaged in the purchase, transport, importation or participation in any transaction involving merchandise that:
a. is of Cuban origin; or
b. is or has been located in or transported from or through Cuba; or
c. is made or derived in whole or in part of any article which is the growth, produce or manufacture of Cuba; .
2. engaged in any transaction in which a Cuba national or the government of Cuba has any interest, or which involves property in which a Cuban national or the government of Cuba has any interest;
3. been a party to, or had an interest in any franchise, license or management agreement with a Cuban national or the government of Cuba, or which involves property in which a Cuban national or the government of Cuba has any interest;
4. had or held any investment, deposit, loan borrowing or credit arrangement or had any other financial dealings with a Cuban national or the government of Cuba, or which involves property in which a Cuban national or the government of Cuba has any interest;
5. subcontracted with, purchased supplies from, or performed billing or collection services for any person or entity that does business with Cuba as provided in "1" through "4" above;
6. traveled to Cuba in violation of U.S. travel restrictions during the ten year period preceding the due date for submittal.

3. In the last four years a number of the Plaintiffs have submitted and received grants from the County for various cultural projects. On each of those occasions Plaintiffs have signed the Cuba Affidavit. Plaintiffs now seek to be considered for such grants without being required to sign the affidavit.

4. The original deadline of April 13, 2000, was extended by the County to May 16, 2000.

ingly ask this court to require the County to consider their application without submission of the "Cuba Affidavit."

## III. PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" that should be granted only if Plaintiffs clearly established their "burden of persuasion." *McDonalds Corporation v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). Plaintiffs must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury outweighs whatever damage the injunction may cause; and (4) that if issued, the injunction would not be adverse to the public interest. *Gonzalez v. Reno*, 2000 WL 381901 (11th Cir. April 19, 2000); *Haitian Refugee Center, Inc. v. Baker*, 949 F.2d 1109, 1110 (11th Cir.1991); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989). Of these four requisites the first factor, establishing a substantial likelihood of success on the merits, is most important and the only one at issue here.[5] *See Gonzalez* at *1.

### A. Substantial Likelihood of Success on the Merits

In ruling on Plaintiffs' motion for preliminary injunction this court must examine whether the "Cuba Affidavit" requirement is likely to be found unconstitutional under any of Plaintiffs' numerous constitutional challenges. This court finds that Plaintiffs have met their burden under the *current state of the law*. Specifically, this court finds that based on existing case law, there is a substantial likelihood that the "Cuba Affidavit" requirement will be found

unconstitutional under the foreign affairs provisions, foreign commerce clause and supremacy clause. Although, this court is troubled by the implications that the "Cuba Affidavit" may have on First Amendment and equal protection clause rights, it specifically does not rule on those claims by this Order.

### B. Foreign Policy Grounds

■ "For local interests the several States of the Union exist, but for national purposes, embracing our relations with foreign nationals, we are but one people, one nation, one power." *Chae Chan Ping v. United States*, 130 U.S. 581, 606, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). Various express and implied constitutional clauses vest this nation's foreign affairs in the federal government almost to the exclusion of the individual states.[6] *United States v. Pink*, 315 U.S. 203, 233, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 49 (1st Cir.1999). In this arena federal dominion is supreme and a state law relating to foreign affairs will be unconstitutional if the "State's policy may disturb foreign relations." *Zschernig v. Miller*, 389 U.S. 429, 441, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968).

■ All fifty states "speak with one voice when regulating commercial relations with foreign governments." *Natsios*, at 57 (quoting *Barclays Bank PLC v. Franchise Tax Board*, 512 U.S. 298, 302–303, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994)). A state law will run afoul of the federal foreign affairs power if it impinges on the authority of the United States or affects international relations in a persistent and subtle way. *Id.* at 50; *Board of Trustees*

---

5. As to the remaining requisites, Plaintiffs claim they will be irreparably harmed because they are prevented from entering their application into the grant pipeline; their injury outweighs any injury to the County because they are only asking that the County consider the grants; and the injunction would not disserve public interest—it would only promote

it. The County does not contest these requisites.

6. This plenary power is clearly evidenced in numerous constitutional provisions. *See* Article I, § 8, cls. 1, 3, 4, 10, and 11, § 10, cls. 1, 2, 3; *See also National Foreign Trade Council v. Natsios*, 181 F.3d 38, 49 (1st Cir.1999).

*of Employees' Retirement System of City of Baltimore v. Mayor and City Council of Baltimore,* 317 Md. 72, 562 A.2d 720, 746 (1989). A state law regulating foreign affairs which has no more than an "incidental or indirect effect in foreign countries" will be valid. *Zschernig,* at 434–35, 88 S.Ct. 664. The central question before this court is whether the "Cuba Affidavit" requirement impinges on the foreign affairs powers of the federal government in that it has more than an incidental or indirect effect on foreign countries.

▆ A dearth of established precedent in this evolving area of the law makes it difficult to determine Plaintiffs' likelihood of success on the merits. Counsel has invited the court to review this issue based on the First Circuit's ruling in *Natsios* and the Maryland Court of Appeals ruling in *Baltimore.* This court accepts the invitation recognizing the limited nature of this preliminary injunction; a lack of binding Eleventh Circuit precedent; and the anticipated Supreme Court decision in *Natsios.*[7]

*Natsios* found unconstitutional a Massachusetts law known as the Massachusetts Burma Law. Under this law, a firm engaged in business with Myanmar (formerly known as the Nation of Burma) was placed on a "restricted purchase list." All firms on this list were essentially prohibited from doing business with the Massachusetts, its agencies or authorities. *Natsios,* at 45–46. The purpose of this law was to demonstrate against the deplorable human rights conditions in Burma.

The First Circuit found that the Burma law encroached on the federal government's foreign affairs power because: (1) the law was designed to affect the affairs of a foreign country; (2) Massachusetts, with two billion dollars in purchasing power, was in the position to have an effect on foreign policy; (3) Massachusetts may be a bellwether for other states; (4) other coun-

tries and international organizations protested the law; and (5) the Burma law was different from the federal law in a number of ways. Based on these factors the court concluded that the Burma law impinged on the foreign affairs power of the federal government.

*Baltimore* involved a City of Baltimore ordinance which prohibited certain city pension funds from investing in banks or financial institutions "doing business in or with" the countries of South Africa or Namibia. *Baltimore,* at 80–81, 562 A.2d 720. The *Baltimore* court upheld the ordinance based on the Supreme Court decisions in *Clark v. Allen,* 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947), and *Zschernig v. Miller,* 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968).

In *Clark* a California statute, which allowed a non-resident alien to inherit personal property only if, under the laws of the alien's nation, American citizens had a "reciprocal right" to inherit personal property, was upheld as constitutional. The Court stated that the rights of succession to property are governed by local law even if it will have some incidental or indirect effect in foreign countries. *Baltimore,* at 744–45 (quoting *Clark v. Allen,* at 516–17, 67 S.Ct. 1431).

In *Zschernig,* a similar Oregon law was struck down as unconstitutional because the application of the Oregon law led to "extensive critical commentary concerning the nature and conduct of foreign governments." *Id.* at 745–46.

Based on these two decisions the *Baltimore* court held that the Baltimore ordinance "did not unconstitutionally intrude upon the federal government's authority over foreign affairs." *Id.* The Baltimore ordinance did not require any "continuing investigation, assessment or commentary by local government officials or employees

---

**7.** The First Circuit decided *Natsios* on June 22, 1999, *certiorari* was granted by the Supreme Court on November 29, 1999, and oral argument before the Supreme Court took place on March 22, 2000. *Natsios v. National Foreign Trade Council,* — U.S. —, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999). To date no opinion has been handed down.

into the laws or operations of the South African government." *Id.* In addition, the ordinance would have only an "incidental or indirect effect" on South Africa, especially because it precluded only companies doing a significant amount of business with South Africa. *Id.* at 746–47.

### C. Foreign Policy Analysis

The stated purpose of the "Cuba Affidavit" is to protest and condemn Cuba's totalitarian regime, an admittedly commendable cause. This sweepingly broad ordinance is intended to punish Cuba, not protect the citizens of Miami–Dade County. The County, at its own expense, nobly seeks to discourage any form of trade with Cuba. Precisely for these reasons, the ordinance is outside the scope of the County's power.

This nation's relationship with Cuba has for the last forty years been marked with tension and confrontation. The United States' foreign policy toward Cuba has been a subject of much public deliberation and debate. In this hotbed of foreign affairs, it is of paramount importance that the federal government be recognized as the "one voice" of all Americans.

The Cuba Affidavit significantly exceeds the scope of the United States embargo on Cuba. This risks "upsetting Congress's careful choice of tools and strategy." *Natsios,* at 76. For example, the federal government's embargo includes exceptions for cultural exchange, humanitarian assistance and the sale of medicine. The "Cuba Affidavit's" blanket provisions recognize none of these exceptions.[8]

The impingement of the "Cuba Affidavit" on foreign affairs goes beyond that of both the Massachusetts Burma Law and the City of Baltimore's ordinance. First, the law was designed to specifically impact

and affect the affairs of a foreign country. Second, Miami–Dade County by its geographic proximity to Cuba is in the position to have an independent impact on foreign policy. Third, Miami–Dade County, like Massachusetts, may be a bellwether for other states. Fourth, the "Cuba Affidavit" is significantly more restrictive than the existing United States embargo on Cuba. Finally, unlike the Baltimore ordinance, the "Cuba Affidavit" affects any entity that ever interacted with Cuba or a Cuban national in the second or third degree. As such the "Cuba Affidavit" is an independent foreign policy that has more than an "Incidental or indirect effect" on Cuba.

### D. Preemption

■ Preemption under the Supremacy Clause exists when a federal statute is so pervasive as to occupy the field; where it would be physically impossible to comply with both the state and federal statute; or where the enforcement of the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Id.* at 73 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). "When Congress legislates in an area of foreign relations, there is a strong presumption that it intended to preempt the field, in particular where the federal legislation does not touch on a traditional area of state concern." *Id.* at 76.

■ It is substantially likely that the "Cuba Affidavit" will be found to be preempted by numerous federal statutes regarding the embargo on Cuba. The court in *Natsios* found that "Congress has chosen to rely on both carrots and sticks. Massachusetts uses a cudgel. In doing so Massachusetts risks upsetting Congress'

---

8. The broad scope of the "Cuba Affidavit" was most recently apparent in the County's dealing with TCG Payphones USA, Inc. TCG Payphones is a subsidiary of AT & T Corporation, an entity that legally does business with Cuba under the CDA Act. Though AT & T violated no law, absent a special waiver by the County Manager, both it and any of its subsidiaries are prohibited from contracting with the County. *See* Defendant's Exhibit 1, Agenda Item No. 10(A)(1) p.5.

careful choice of tools and strategy." *Id.* The same reasoning applies here.

### E. First Amendment

For the limited nature of this order, this court need not reach the First Amendment challenges presented by Plaintiffs. However, it is important to reiterate that neither this order nor the First Amendment requires Miami–Dade County to subsidize Cuban artists or Cuban cultural programs. *National Endowment for the Arts v. Finley,* 524 U.S. 569, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998). As the master of its purse, Miami–Dade County can selectively choose those programs which it desires to fund. *Id.* What the County can not do is arbitrarily refuse to consider Plaintiffs' applications on unconstitutional foreign policy grounds.

### IV. Conclusion

The purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974). Given this limited purpose, a party "is not required to prove his case in full at a preliminary-injunction hearing" and the "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits". *Id.*

Based on its review of the record, this court finds that there is a substantial likelihood that Miami–Dade County Resolution R–202–96 will be found unconstitutional under the federal foreign affairs powers, foreign commerce clause and preemption doctrine.

However, as to Miami Dade County Resolution R–206–96, this court does not find a substantial likelihood of success on the merits and, accordingly, a preliminary injunction shall not issue. R–206–96 restricts only activities otherwise proscribed by the federal government and has no independent impact on foreign policy.

It is therefore,

**ORDERED AND ADJUDGED** that Miami–Dade County must temporarily allow Plaintiffs to participate in the application process for Miami–Dade County International Cultural Exchange grants without complying with Resolution R–202–96. Plaintiffs' may comply with R–202–96 by excising the offensive portions of the standard "Cuba Affidavit" and submitting a modified affidavit.