[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11447
Non-Argument Calendar
_____

D.C. Docket No. 0:04-cv-60573-FAM


SECURITIES AND EXCHANGE COMMISSION, et al.,

Plaintiffs,

ACHERON CAPITAL, LTD.,

Plaintiff-Appellant,

LITAI ASSETS, LLC,

Interested Party-Appellant,

versus

MUTUAL BENEFITS CORP., et al.,

Defendants,

BARRY MUKAMAL,
as Trustee of the Mutual Benefits Keep Policy Trust,

Trustee-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 21, 2020)

Before WILLIAM PRYOR, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

This appeal stems from the long-running receivership proceeding for Mutual Benefits Corporation. In the Order before us on appeal, the district court granted an application by Barry Mukamal (the "Trustee"), the trustee of the Mutual Benefits Keep Policy Trust (the "Trust"), to authorize the Trust's engagement of a back-up servicer to maintain the Trust's data related to the servicing of the Trust policies. The Order also directed Litai Assets, LLC ("Litai"), the Trust's primary servicer, to cooperate with the back-up servicer by delivering and transferring all of the Trust's data to the Trust and/or the back-up servicer. The Trustee's motion was opposed by Litai, as well as Acheron Capital, Ltd. ("Acheron"), investment manager for and owner of more than 60% of the policies held by the Trust. Both Litai and Acheron appeal from the district court's Order.

After careful consideration, we vacate the district court's decision to grant the Trustee's motion and remand for further proceedings consistent with this opinion.

2

## I.

A. FACTUAL BACKGROUND

### 1. Formation of the Trust

In 2004, the Securities and Exchange Commission filed an enforcement action against Mutual Benefits for fraudulently selling fractional investment interests in viaticated life insurance policies.[1] The administration and management of these Mutual Benefits policies were put into receivership by the district court. Investors who purchased the policies had the option of retaining their investments or directing the court-appointed receiver to sell their interests. The policies retained by investors are referred to as the "Keep Policies." In 2009, the district court entered an Order (1) authorizing the creation of the Trust, subject to the terms of the Mutual Benefits Keep Policy Trust Agreement (the "Trust Agreement"); (2) appointing Mukamal as Trustee; (3) authorizing the sale of the business of Viatical Services, Inc. to Litai; and (4) approving an agreement between the Trustee and Litai (the "Servicing Agreement"), pursuant to which Litai serviced the continued administration of the insurance policies for the Trust's benefit. The court also transferred ownership of the Keep Policies to the Trustee and authorized

---

[1] "A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value. The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value." SEC v. Mut. Benefits Corp., 408 F.3d 737, 738 (11th Cir. 2005).

3

the Trustee to sell the interests in policies in which investors had failed to pay premium and administration fees.

Acheron initially bought fractional interests in the Keep Policies from the receiver.  It continued to do so after the policies were transferred to the Trustee.  As of the dates relevant to this appeal, Acheron had paid more than $45 million to purchase interests in the Keep Policies and held more than 60% of the face policy value of all the Keep Policies held in the Trust.  Acheron says that if it had not made the purchases, the Keep Policies would have been at risk of lapsing for non-payment of premiums.  Thus, Acheron "provides a valuable benefit to the Trust by (1) purchasing interests in Keep Policies that were otherwise subject to lapsing and (2) providing funds (i.e., the purchase price for the Keep Policies) to fund the administration of the Trust."  Acheron Br. at 6.

2. The Servicing Agreement

The Trustee and Litai first entered into the Servicing Agreement in 2009.[2] Under the Servicing Agreement, Litai was provided with the Trust's "viator files," which includes effectively all materials received or created by the servicer in the performance of its services.  On a day-to-day basis, Litai is responsible for many services, including: fund management; policy premium payment services;

―――――――――――――――

[2] Following a court approved extension, the Servicing Agreement is set to expire on April 22, 2020.

4

accounting and reporting services; insured tracking services; death claim management; customer service; policy change functions; maintenance and updating of viator files; financial reporting; access to records; and disposition services.

### 3. The Acheron Agreement

In late 2014, a dispute arose over whether Acheron, as a third-party purchaser of interests from the Trustee, was entitled to the same status and protections as investors who are beneficiaries of the Trust.  This led Acheron and the Trust to negotiate an agreement (the "Acheron Agreement"), which the district court approved simultaneously with the Servicing Agreement renewal.

In relevant part, the Acheron Agreement provides: "Upon termination of the Renewal Agreement, the Trustee shall not negotiate a new servicing agreement or further extension of any existing Servicing Agreement without giving Acheron the right to participate actively in any negotiations that involve the servicing of any policies in which Acheron has an interest . . . ."  Acheron also has the right to "refuse to approve any new servicing agreement or further extension of the Renewal Agreement which is not on commercially reasonable terms."  If the Trustee and Acheron cannot agree on the terms of "a new servicing agreement or further extension of the existing Servicing Agreement," the parties are obligated to submit the dispute to mediation.

B. PROCEDURAL HISTORY

On February 25, 2019, the Trustee filed the motion that is the subject of this appeal (the "Back-Up Motion").[3]  In the Back-Up Motion, the Trustee explained its desire to engage a back-up servicer to guard against "failure or default on the part of the primary servicer, or even simply some sort of data error or anomaly." The Trustee said it had reached an agreement with Q Capital Strategies, LLC ("Q Capital"), which agreed to provide back-up services "by uploading the Trust's data on a periodic basis into a case management system, providing reporting to the Trust, and reviewing and testing the data to ensure it has been transmitted and backed up appropriately."  The Trustee noted it had "not negotiated any agreement with Q Capital for the provision of primary servicing functions in the event of a failure or default by . . . Litai."  However, it reserved the right to "do[] so if such an event were to occur."  The Trustee acknowledged that, pursuant to the Acheron Agreement, "Acheron would have those rights with respect to the negotiation of any new primary servicing agreement."

---

[3] That same day, the Trustee also filed a "Motion to Authorize Retention of Broker and to Obtain Updated Life Expectancy Reports" (the "Broker Motion") and a "Motion for Clarification" (the "Clarification Motion").  The Broker Motion requested permission for the Trustee to market the policy interests to other potential buyers, including by obtaining a broker to market those policies, and to obtain updated life expectancy reports for the relevant viators.  The Clarification Motion requested that the court address a variety of issues related to the Keep Policies.  Both motions were referred to the magistrate judge for a decision.  The magistrate judge ruled on these motions by order dated June 4, 2019.

6

The back-up servicing arrangement sought by the Trustee would require Q

Capital to access the Trust's data.  For that reason, the Back-Up Motion also asked

the court to order "that Litai is directed to fully cooperate with the Trustee and the

back-up servicer to deliver complete and functional back-ups of all the Trust's data

relating to the Keep Policies to the Trustee or the back-up servicer, as appropriate,

on a continuing basis as requested by the Trustee."  The Trustee reported that it

had been trying to get Litai to deliver a back-up of the Trust Data for more than a

year, but that Litai had not complied.

The district court granted the Back-Up Motion without explanation.[4]  We

refer to the district court's Order as the "Back-Up Order."  Both Acheron and Litai

timely filed this appeal from the Back-Up Order.  On appeal, Litai has adopted

Acheron's briefing rather than submit its own briefs.

## II.

Before reaching the merits of the appeal from the Back-Up Order, we must

satisfy ourselves of our jurisdiction to hear the appeal.  See J.W. ex rel. Williams v.

Birmingham Bd. of Educ., 904 F.3d 1248, 1254–55 (11th Cir. 2018) (per curiam).

In general, courts of appeals have jurisdiction to review two types of orders by the

---

[4] Objections to the Back-Up Motion were due by March 11.  On March 8, Acheron and Litai, with consent of the Trustee, requested an extension of time in which to respond to the Motion.  The district court never ruled on the extension request so Litai and Acheron submitted their separate responses in opposition to the Back-Up Motion on March 11.  The district court's Order granting the Back-Up Motion was docketed on March 15.  However, the Order is dated March 7, four days before the deadline for objections.

district court: final orders, 28 U.S.C. § 1291; and interlocutory decisions, including injunctions, id. § 1292(a).  See Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co., 768 F.3d 1320, 1324 (11th Cir. 2014).  The appellants argue their appeal is proper under either framework.  We conclude the Back-Up Order was a final order under § 1291.  We need not, therefore, address whether it is also appealable under § 1292(a)(1).

"A final decision is typically one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment."  Mayer v. Wall St. Equity Grp., Inc., 672 F.3d 1222, 1224 (11th Cir. 2012) (per curiam) (quotation marks omitted).  Although postjudgment orders, such as the Back-Up Order, "necessarily follow a final judgment, such orders are themselves subject to the test of finality."  Mamma Mia's, 768 F.3d at 1325 (quotation marks omitted).  In general, "an order is deemed final if it disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings."  Mayer, 672 F.3d at 1224; see 15B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3916 (2d ed. Apr. 2020 update) ("Orders relating to the enforcement, execution, or interpretation of a final judgment ordinarily should be final . . . unless closely related questions or proceedings remain pending.").

The Back-Up Order is an appealable final judgment under § 1291.  Although the Trustee is correct that the Back-Up Order did not "dispose of all issues raised

in the receivership proceeding," that is not the relevant question. The Back-Up Motion raised discrete requests for postjudgment relief, so it is considered by itself to be a "free-standing litigation." Mayer, 672 F.3d at 1224 (quotation marks omitted). The Order disposing of those requests is appealable. Even if the Trustee were right that the pendency of the Broker Motion and the Clarification Motion could render the Back-Up Order non-final, that is beside the point because these motions have since been decided.

## III.

We now proceed to the merits of this appeal. The appellants argue that the Back-Up Order is contrary to the terms of the Acheron Agreement and that the district court should have granted an evidentiary hearing prior to ruling on the Back-Up Motion. The appellants also fault the district court for apparently ruling on the Back-Up Motion before their deadline to respond to the motion. The Trustee responds that his decision is owed broad discretion because of his role as trustee for the Trust. Further, and in any event, the Trustee argues that the Back-Up Order does not violate the rights of either Acheron or Litai. The Trustee also says no evidentiary hearing was needed on this "fairly routine matter of trust administration."

The Trustee's desire to apply trust principles to this case misses the mark. Acheron's objections to the Back-Up Order stem from the Acheron Agreement.

9

The Acheron Agreement is governed by Florida Law.  Under Florida law, the Trustee does not have broad discretion to act in contravention of the Acheron Agreement because that agreement does not confer any discretion upon him.  Cf. DeMello v. Buckman, 916 So. 2d 882, 886–87 (Fla. 4th DCA 2005) (stating that a trustee's discretion is limited to "the discretion conferred upon him" by "the terms of the trust").  Thus, to the extent Acheron's appeal is based on the Trustee's alleged violation of the Acheron Agreement, we review de novo the district court's approval of the Back-Up Order as a matter of contractual interpretation.  See Rose v. Steigleman, 32 So. 3d 644, 645 (Fla. 1st DCA 2010) ("A trial court's interpretation of a contract is a matter of law and is thus subject to de novo review.").

It is plain to us that the district court erred in granting the Back-Up Motion without considering Acheron's rights under the Acheron Agreement.  The Acheron Agreement grants Acheron "the right to participate actively in any negotiations that involve the servicing of any policies in which Acheron has an interest."  Acheron may also "refuse to approve any new servicing agreement . . . which is not on commercially reasonable terms."  The Acheron Agreement does not limit these rights to the provision of primary servicing agreements, as the Trustee seems to imply.  Under the plain text of the Acheron Agreement, Acheron had a right to

10

participate in the negotiations between the Trustee and Q Capital regarding the back-up servicing agreement. The district court erred by ruling otherwise.

The Trustee also argues that, even if Acheron had a right to participate in the negotiations with Q Capital, any violation of that right in this case would be harmless. Specifically, the Trustee says Q Capital would not displace any functions undertaken by Litai; Acheron has all the information it needs regarding "the exact scope and cost of Q Capital's services"; and that Q Capital's qualifications are not at issue since Q Capital would act merely as a back-up servicer.

First, the Acheron Agreement does not limit the Trustee's obligation to involve Acheron in negotiations based on the validity of Acheron's potential objections to any deal the Trustee wants to enter into. But even aside from that, it is impossible for this Court—or, for that matter, the district court—to know if the Trustee's defenses are meritorious on the basis of the record as it currently exists. Although the district court did not articulate its basis for granting the Back-Up Motion, to the extent it decided these disputed issues in the Trustee's favor without an evidentiary hearing, such decision was an abuse of discretion. See All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1538 (11th Cir. 1989) ("Where the injunction turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility

11

issues."); see also Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004) (setting forth standard of review for denial of request for evidentiary hearing).

Because we vacate the district court's grant of the Back-Up Motion, we need not decide whether the Back-Up Order violated Litai's property rights or Acheron's privacy rights. We will give the district court the first chance to weigh in on these fact-specific arguments following an evidentiary hearing on both appellants' objections to the Back-Up Order. Finally, since we have vacated the Back-Up Order, we need not address whether the district court erred by seemingly ruling on the Back-Up Motion before objections to the motion were due or submitted.

**VACATED AND REMANDED.**

12